UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| In re:<br><br>SHAWN A. RUDNICK,<br><br>                Debtor. | Case No. A12-00170-DMD<br>Chapter 13 |
|---|---|

### MEMORANDUM ON OBJECTIONS TO CHAPTER 13 PLAN

A hearing on confirmation of the debtor's amended chapter 13 plan was held before the undersigned on July 24, 2012. A combined objection to confirmation and motion to dismiss,[1] filed by creditor Cathy Loughlin, was also heard. Chris Johansen, counsel for the debtor, appeared at the hearing, as did Swan Ching, counsel for Loughlin. Larry Compton, the chapter 13 standing trustee, was also present. After hearing the arguments of counsel, the court granted Mr. Ching ten days to file a brief in response to the legal authorities cited by Mr. Johansen at the hearing. Mr. Ching's brief having been filed,[2] the matter is now ripe for decision. For the reasons stated below, Loughlin's objection to confirmation will be overruled. The debtor will be given an opportunity to file an amended plan with the terms discussed at the July 24th hearing.

Background

The debtor, Shawn Rudnick, commenced this chapter 13 proceeding on March 14, 2012. This is his second bankruptcy filing in less than two years. His prior

---

[1] Obj. to Confirmation and Mot. to Dismiss, filed May 16, 2012 (Docket No. 32).

[2] Am. Obj. to Ch. 13 Plan, filed Aug. 3, 2012 (Docket No. 43).

bankruptcy, a chapter 7, was filed on June 2, 2010.[3]  He received a discharge on October 7, 2010.  Loughlin was a creditor in Rudnick's chapter 7 case, and initiated an adversary action against him seeking to except her claim from discharge on the basis of fraud.[4]  Her complaint alleged that Rudnick had remodeled her home without the proper contractor's license and that she had been damaged by his faulty workmanship.  After a trial on the merits, Loughlin prevailed.  On September 21, 2011, this court entered a final judgment awarding her the total sum of $77,297.64, which sum was excepted from discharge under 11 U.S.C. § 523(a)(2)(A).[5]  Loughlin recorded the judgment in the Palmer Recording District on November 10, 2011.  In December, 2011, she served a writ of execution for garnishment of wages on Rudnick's employer,[6] and received three substantial returns on that writ in early 2012.

Approximately six months after entry of Loughlin's judgment, Rudnick filed the instant chapter 13 case.  On his schedules of assets and liabilities, Rudnick listed $79,635.00 in unsecured debt.  In addition to Loughlin's unsecured claim, he scheduled three creditors for medical expenses totalling $2,225.00.[7]  Rudnick's amended Schedule I shows

---

[3] *In re Rudnick*, Case No. A10-00465-DMD.

[4] *Loughlin v. Rudnick*, Adv. Case No. A10-90021-DMD.

[5] *Id.* at Docket No. 47.

[6] *Id.* at Docket No. 55.

[7] Schedule F, filed Apr. 24, 2012 (Docket No. 24 at 11).

2

monthly gross income of $4,807.68 and combined average monthly income of $4,035.12.[8] His amended Schedule J shows average monthly expenses of $3,299.67, and net monthly income of $735.45.[9] Rudnick is a below-median debtor whose applicable plan commitment period is three years, pursuant to 11 U.S.C. § 1325(b)(4).[10] However, his amended plan provides for payments of $735.00 per month for 60 months, with a projected dividend of approximately 34.8% to general unsecured creditors.[11]

Loughlin filed an unsecured claim in the instant case for $66,243.90, representing the balance due under the nondischargeable judgment she received in the earlier chapter 7 case. She also filed an objection to confirmation of Rudnick's amended chapter 13 plan, combined with a motion to dismiss the case. The grounds for her objection and motion are: a lack of good faith in proposing the plan, the distribution to unsecured creditors is less than what would be paid under a chapter 7 liquidation, and the plan provides for the discharge of her nondischargeable judgment.

In response to the legal authorities cited by Rudnick's counsel at the July 24, 2012, confirmation hearing, Loughlin filed an amended objection to Rudnick's chapter 13 plan. She asserts that the debtor has understated his monthly income and that he should commit monthly plan payments of $882.74 versus the $735.00 proposed in the plan. She

---

[8] Am. Schedule I, filed Apr. 25, 2012 (Docket No. 29 at 5).

[9] Amended Schedule J, filed Apr. 25, 2012 (Docket No. 29 at 6).

[10] *See* Ch. 13 Statement of Current Mo. Income and Calculation of Commitment Period and Disposable Income, filed Apr. 24, 2012 (Docket No. 27 at 2).

[11] Am. Ch. 13 Plan, filed Apr. 25, 2012 (Docket No. 28).

3

further argues that the plan should specifically state that any unpaid balance of her judgment, after completion of plan payments, is nondischargeable. Finally, she requests that the $3,500.00 in attorney's fees she has incurred in this matter be added to her nondischargeable judgment.

Analysis

Loughlin contends Rudnick's plan shows a lack of good faith. A chapter 13 plan must be "proposed in good faith and not by any means forbidden by law" if it is to be confirmed by the bankruptcy court.[12] Whether a debtor has proposed a plan in good faith is determined on a case-by-case basis.[13]

> A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of *all* militating factors.[14]

The facts in this case support a finding of good faith. First, Rudnick's amended plan provides for a 60 month term. As a below-median debtor, he could propose a plan with a three-year term under § 1325(b)(4)(A)(i), but has voluntarily extended his plan term an

---

[12] 11 U.S.C. § 1325(a)(3).

[13] *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982).

[14] *Id.* (emphasis in original).

additional two years. With permanent fund dividends, the projected total to be paid into the plan (exclusive of any tax refunds) is $50,600.00. This is not an insubstantial sum.

Next, Rudnick's amended plan proposed the full payment of two secured claims, one for a 2009 Heartland travel trailer and the other for a 2004 Polaris Sportsman four-wheeler. Loughlin objected to his retention of these assets and repayment of these debts, arguing that the funds should instead be directed to pay unsecured creditors. At the confirmation hearing, Rudnick agreed to amend his plan to surrender these assets. This redirects $276 of Rudnick's monthly plan payments to the unsecured class of claims, and increases the projected total for distribution to that class from $27,742.00 to $44,302. The estimated dividend to unsecured creditors, including Loughlin, will go from 34.8% to 54%.[15] Rudnick's agreement to surrender of these assets to bump up the payment to unsecured creditors is another indicia of his good faith in this chapter 13 case.

In spite of this, Loughlin argues that the distribution to unsecured creditors under the amended plan is less than what those creditors would receive in a chapter 7. She does not base this argument on the value of Loughlin's non-exempt assets, which are negligible. Rudnick's schedules reflect that there would be nothing in a chapter 7 case for the trustee to liquidate. Instead, Loughlin contends that Rudnick has understated his gross income on Schedule I. She arrives at this conclusion by adding his 2010 and 2011 gross

---

[15] The claim bar date has passed and just one other unsecured creditor has filed a proof of claim. Accordingly, the plan distribution to Loughlin and the other unsecured creditor will come closer to 65%.

5

income figures, as listed on his Statement of Financial Affairs,[16] and dividing that total by 24. Using this calculation, Loughlin contends the true amount of Rudnick's gross income is $5,690.42, rather than the $4,807.68 reflected on his amended Schedule I. She insists that the difference between these two sums, $882.74, should be the amount of Rudnick's monthly plan payment.[17]

This argument is flawed for two reasons. First, because Loughlin's figures are based upon an average of Rudnick's *gross* annual income, they fail to take into account any deductions for payroll taxes and social security. More significant, however, is the fact that nothing in the Bankruptcy Code supports Loughlin's argument for using a two-year look-back to determine Rudnick's current monthly income. The term "current monthly income," as defined under the Bankruptcy Code, supports just a six-month look-back into a debtor's income. Under § 101(10A), "current monthly income" is defined as the debtor's average monthly income from all sources for the six-month period immediately preceding the filing of the petition.[18] The Code requires an individual debtor to file a schedule of current income and expenses and submit copies of payment advices he has received within the 60-day period prior to the filing of his bankruptcy case.[19] The information a debtor is to provide on

---

[16] Statement of Fin. Affairs, filed Apr. 24, 2012 (Docket No. 26 at 1). Rudnick indicates that his gross income for 2010 was $66,003.40 and for 2011 it was $70,567.00. His employer for both years was Taylor Restoration Services, for whom he still works.

[17] *See* Am. Obj. to Chapter 13 Plan (Docket No. 43 at 2).

[18] 11 U.S.C. § 101(10A)(i).

[19] 11 U.S.C. § 521(a)(1)(B); Fed. R. Bankr. P. 1007(b)(1).

6

Schedule I is based upon current, actual income, rather than an historical average. Both Rudnick's original and amended Schedules I list $4,807.68 is his monthly gross income.[20] Given that his payment advices support this figure,[21] there is no evidence to indicate that Rudnick has misrepresented his current income.

Further, for purposes of plan confirmation the court looks to the debtor's "projected disposable income" as of the effective date of the plan.[22] The calculation of a debtor's "projected disposable income" is "forward looking" in nature and "the court may take into consideration changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."[23] Restricting the court to a mechanical approach where plan payments are determined only by looking to a debtor's prebankruptcy disposable income would produce "senseless results" which would either injure unsecured creditors, in instances where the debtor's postpetition income is expected to increase, or deny chapter 13 protection to a debtor whose income has declined.[24]

There is no basis in the Code to support Loughlin's urging that the court increase Rudnick's plan payments. In his amended plan, Rudnick commits all of his disposable income, as reflected on his amended Schedule J, to plan payments. Nothing in

---

[20] *See* Sched. I, filed Apr. 24, 2012 (Docket No. 24 at 14); Am. Sched. I, filed Apr. 24, 2012 (Docket No. 29 at 5).

[21] Payment Advices, filed May 4, 2012 (Docket No. 30).

[22] 11 U.S.C. § 1325(b)(1) (emphasis added).

[23] *Hamilton v. Lanning*, ___U.S.___, 130 S. Ct. 2464, 2478 (2010).

[24] *Id.* at 130 S.Ct. 2475-76.

7

the record suggests that Rudnick's income over the plan term will either increase or decrease. The proposed plan payments satisfy the requirements of § 1325(b)(1), which provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[25]

Rudnick has voluntarily extended his plan term to 60 months. Additionally, he has agreed to surrender collateral to two secured creditors, with the result that a higher percentage of his plan payments will be devoted to payment of general unsecured creditors. There is nothing in the record to indicate that Rudnick has misrepresented his current monthly income. Finally, his amended plan complies with the requirements of § 1325(b)(1). Loughlin's contentions that Rudnick is proceeding in bad faith and that he has understated his income are meritless.

Loughlin also objects to confirmation on the grounds that the plan should specifically state that any unpaid balance of her claim which remains after plan completion is nondischargeable. She contends Rudnick is improperly trying to discharge the unpaid

---

[25] 11 U.S.C. § 1325(b)(1)(B).

balance through the chapter 13 plan, inferring bad faith on the debtor's part. However, the amended plan is silent on this point. Further, Loughlin's contention ignores the chapter 13 discharge provisions found in § 1328(a); a chapter 13 discharge will discharge the debtor of all debts provided for in the plan "*except any debt*" of the kind specified in § 523(a)(2).[26]

> [T]he general rule is that if a particular debt is determined to be nondischargeable in a valid and final judgment by a court with jurisdiction and from which there was an opportunity to appeal, then the debt is always nondischargeable on the basis determined in the judgment. In other words, once nondischargeable, always non-dischargeable.[27]

This general rule is based upon the well-established doctrines of claim and issue preclusion.[28] The bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts under § 523(a)(2).[29] If that determination is made and reduced to final judgment in one bankruptcy case, it is unnecessary for the affected creditor to relitigate the issue in a subsequent bankruptcy case filed by the same debtor.[30] Given these well-settled principles and the express provisions of § 1328(a)(2), there is no need for Rudnick's amended plan to specify that Loughlin's claim will not be discharged in this chapter 13 case.

---

[26] 11 U.S.C. § 1328(a)(2) (emphasis added).

[27] *Moncur v. Agricredit Acceptance Co. (In re Moncur)*, 328 B.R. 183, 186 (B.A.P. 9th Cir. 2005) (citation and footnote omitted).

[28] *Id.* at 185.

[29] *Id.* at 187; *see also* 11 U.S.C. § 523(c).

[30] *Id.* at 189.

9

Loughlin's claim, already excepted from discharge in Rudnick's earlier chapter 7 case, will survive a chapter 13 discharge as well.

Finally, Loughlin asks that the attorney's fees she has incurred in this matter, approximately $3,500.00, be added to her nondischargeable judgment. She argues that "[t]hese fees would not have been incurred but for the chapter 13 filing."[31] While this argument suggests that Rudnick's commencement of this case was improper, there is nothing in the record to support Loughlin's assertions of bad faith. The fees Loughlin has incurred here were to litigate fundamental chapter 13 issues. They are not related to the § 523 litigation conducted in Rudnick's earlier chapter 7 case. Loughlin's counsel is an experienced attorney. Legal research would have revealed that the points raised in Loughlin's objection were meritless. Accordingly, the request for additional attorney's fees will be denied.

Conclusion

The court concludes, from the entirety of the record, that Rudnick's plan was proposed in good faith. His schedules and statements appear to be accurate. He has not understated his income. Although Rudnick qualifies for a commitment period of three years, he voluntarily extended his plan term to five years. He has agreed to surrender collateral to two secured creditors, with the result that the distribution to general unsecured creditors, including Loughlin, will increase substantially. All of his projected disposable income is

---

[31] Am. Obj. to Ch. 13 Plan (Docket No. 43), at 2.

10

committed to the repayment of unsecured creditors.  Accordingly, Loughlin's objections to plan confirmation will be overruled.  Her motion to dismiss, combined with her original objection, will be denied as well.

      Rudnick's counsel must file a second amended plan which provides for surrender of the travel trailer and the four-wheeler, as agreed at the July 24th hearing, and reflects the increased distribution to general unsecured creditors.  The second amended plan will need to be noticed to the two secured creditors affected by these changes.  However, the court will shorten the notice period.  Assuming no further objections to confirmation are filed, and the standing trustee recommends confirmation, the second amended plan will thereafter be confirmed.  An order consistent with this memorandum will be entered.

      DATED:  September 6, 2012.

                              /s/ Donald MacDonald IV
                              DONALD MacDONALD IV
                              United States Bankruptcy Judge

Serve:   S. Ching, Esq.
            C. Johansen, Esq.
            L. Compton, Trustee
            U.S. Trustee